In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00045-CV
______________________________


 
IN THE INTEREST OF J. S., A CHILD
 


                                              

On Appeal from the 279th Judicial District Court
Jefferson County, Texas
Trial Court No. F-193,025


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            Joseph James, Jr., filed a petition affecting the parent-child relationship, alleging that he is
the father of J. S. and that Taneska Stout is the child's mother. In his original petition, Joseph alleged
Taneska is a nonresident of Texas and could be served with process at Fortson, Georgia. Joseph
further alleged J. S. was born December 25, 2003, and resided in Harris County, Georgia. Joseph
requested that the court enter an order appointing him and Taneska as joint managing conservators. 
Taneska filed a response entitled Special Answer and Special Motion to Dismiss, in which she
specifically denied that the Jefferson County, Texas, court had jurisdiction. She further alleged that
the minor child had resided in the State of Georgia since birth and that Georgia was the home state
of the child in accordance with the Uniform Child Custody Jurisdiction and Enforcement Act
(UCCJEA). The trial court considered the motion for temporary orders February 7, 2005, and
determined jurisdiction was not proper in the State of Texas and dismissed the case without
prejudice March 7, 2005. Joseph appeals alleging Taneska had sufficient contacts with the State of
Texas to allow the district court to exercise jurisdiction.
            Joseph argues that Taneska previously attended school in Texas and that the child was
conceived in Texas, thereby authorizing Texas courts to exercise jurisdiction. These allegations are
relevant as to personal jurisdiction; however, this case is controlled by subject-matter jurisdiction. 
Subject-matter jurisdiction exists when the nature of the case falls within a general category of cases
that the court is empowered, under applicable statutory and constitutional provisions, to adjudicate. 
In re Barnes, 127 S.W.3d 843, 846 (Tex. App.—San Antonio 2003, no pet.) (citing McGuire v.
McGuire, 18 S.W.3d 801, 804 (Tex. App.—El Paso 2000, no pet.)). Subject-matter jurisdiction is
essential to the authority of a court to decide a case. Tex. Ass'n of Bus. v. Air Control Bd., 852
S.W.2d 440, 443 (Tex. 1993). Subject-matter jurisdiction over custody issues in Texas is governed
by the UCCJEA. Tex. Fam. Code Ann. §§ 152.001–.317 (Vernon 2002 & Supp. 2004–2005);
Barnes, 127 S.W.3d at 846. That Act provides mandatory jurisdictional rules for an original child
custody proceeding. Georgia has also adopted the UCCJEA. See Ga. Code Ann. § 19-9-61 (2005). 
A Texas court must have jurisdiction under the UCCJEA to make a child custody determination.
            Section 152.201 governs the initial child custody jurisdiction of courts in the State of Texas
and allows Texas courts to make an initial child custody determination only if the statutory
requirements are fulfilled. We will summarize the four possible bases of jurisdiction in Texas and
then examine whether any of the four authorizes a Texas court to conduct this custody determination. 
            (1) Home State Jurisdiction—A Texas court has jurisdiction if Texas is the state in which
a child lived with a parent for at least six consecutive months immediately before the commencement
of a child custody proceeding or was the home state of the child within six months before the
commencement of the proceeding and the child is absent from the state, but a parent continues to live
in Texas. See Tex. Fam. Code Ann. §§ 152.102(7), 152.201(a)(1).
            The undisputed facts compel the conclusion that Texas is not the home state of J. S. Joseph
acknowledges the child was born in Georgia and has never lived in the State of Texas. The child is
almost two years old. Since Georgia is the child's home, it qualifies to exercise jurisdiction over the
custody question. 
            (2) Significant Contact Jurisdiction—A Texas court may also have jurisdiction if no court
from another jurisdiction qualifies as the home state of the child under (1) above or the home state
court of the child has declined to exercise jurisdiction on the ground that such court is an
inconvenient forum or due to unjustifiable conduct (such as kidnapping) by a person seeking to
invoke that court's jurisdiction and the child and at least one parent have significant contacts with
Texas. See Tex. Fam. Code Ann. §§ 152.201(a)(2), 152.207, 152.208.
            There is no allegation or evidence that the courts of the State of Georgia have declined to
exercise jurisdiction or have determined that Texas is the more appropriate forum. Joseph
acknowledges that the child's mother has filed a suit in Georgia regarding parentage of the child. In
her answer and motion to dismiss, Taneska alleges that a Georgia state court has entered an order
granting her custody of the child and determining that Georgia is the home state of the child. 
            (3) More Appropriate Forum Jurisdiction—A Texas court has jurisdiction if all courts
having jurisdiction under (1) or (2) above have declined to exercise jurisdiction, finding Texas the
more appropriate forum. See Tex. Fam. Code Ann. § 152.201(a)(3).
            Texas courts do not acquire jurisdiction under this provision because there is no evidence that
all courts having jurisdiction have declined to exercise jurisdiction or found that Texas courts are
the more appropriate forum.
            (4) Default Jurisdiction—A Texas court has jurisdiction if no court of any other state would
have jurisdiction under (1), (2), or (3) above. See Tex. Fam. Code Ann. § 152.201(a)(4). 
            This provision does not apply because Georgia, as the home state, has jurisdiction under (1)
above. 
            We agree that the district court in Jefferson County, Texas, did not have jurisdiction to make
this custody determination. The provisions of the UCCJEA referred to above are the exclusive
jurisdictional bases for making a child custody determination by a court in Texas. Tex. Fam. Code
Ann. § 152.201(b). 
            We affirm the judgment of the trial court. 
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          September 30, 2005
Date Decided:             October 4, 2005




#160;   The parties' views of this case diverge on this dividing point: whether the lawsuit is about
the Department's decision on where to set the stop bar—a discretionary


 act involving safety
features—or the Department's duty to maintain the right-of-way so growing vegetation did not create
safety issues—a condition or use of the property.
            The plaintiffs acknowledged at trial and on appeal that the Department had the authority to
set the stop bar's location and that the Department's decision on that point was discretionary. The
Department's argument assumes that the Department had the discretion to place the stop bar where
it did. The Department argues that it can design its roads however it chooses and that it has no duty
to "provide a clear line of sight distance from the stop line." 
            But we believe the Department misconstrues the lawsuit's claims. Plaintiffs argued that the
Department has a statutory duty of maintenance and upkeep, including all activities necessary to
"preserve a highway as it was originally designed and constructed." See Villareal v. State, 810
S.W.2d 419, 421 (Tex. App.—Dallas 1991, writ denied); Burnett v. Tex. Highway Dep't, 694 S.W.2d
210, 212 (Tex. App.—Eastland 1985, writ ref'd n.r.e.). The case was submitted to the jury, not as
a defect in the design of the roadway or in the location of the stop sign, but as a premises defect
allegedly arising from the Department's failure to properly maintain its right-of-way.
            The Department has directed us to no authority that would make the two concepts equivalent. 
It argues that maintenance is not required by law and that maintenance is therefore discretionary. 
Yet, there are cases that require maintenance of roadways.


 The Department attempts to make this
case fit into a safety feature design situation such as those for lights and signs, which are treated as
part of design and thus discretionary and not actionable. That attempt to recast the lawsuit does not
accurately comport with the way the case was submitted. 
            More on point, the Department next argues that it had no duty "with respect to the condition
of the trees, underbrush and obstruction of view on the State's right-of-way." To support that
argument, the Department directs our attention to Jezek, 605 S.W.2d at 546. Jezek involved a
motorist whose car was hit after he pulled out onto a roadway intersection to look for oncoming cars
because he could not see past heavy vegetation. In that case, the city had actual knowledge of the
hazardous condition, including the knowledge that there was a history of vehicle accidents at that
intersection. The court held that "where a city knowingly maintains an intersection right-of-way in
a manner which dangerously obstructs the vision of motorists, . . . they are under a duty to warn of
the danger or . . . make safe the defective condition." Id. at 548; but see Sipes v. Tex. Dep't of
Transp., 949 S.W.2d 516, 521 (Tex. App.—Texarkana 1997, pet. denied) (no evidence of
Department's knowledge of obscured view, thus no liability for vegetation blocking view of
motorist). The implicit jury finding here that the Department knew of the overgrown vegetation
blocking motorists' views is not contested on appeal.
            The Department focuses on a paragraph of the Jezek opinion that acknowledges the problem
of imposing this type of duty on counties and states that "counties in Texas have no proprietary
functions and thus would have no duty in this area." Jezek, 605 S.W.2d at 547. But the Department
is not a county; and, unlike a county, the Department is given "exclusive and direct control of all
improvement of the state highway system," which system is to be provided "efficient maintenance." 
See Tex. Transp. Code Ann. §§ 224.031–.032 (Vernon 1999).



            The Department's argument that keeping its designed sight lines clear is purely a
discretionary duty, and that its immunity is therefore not waived by the Texas Tort Claims Act, is
therefore not supportable. See Hamric, 718 S.W.2d at 919–20 (efficient maintenance includes
trimming vegetation on right-of-way so it will not impair motorists' views as they approach
intersections); see also Olson, 980 S.W.2d at 896 (untrimmed shrubbery invading right-of-way and
partially obscuring line of sight from stop position). We overrule this point of error.
(B) The Evidence Is Sufficient To Support the Three Challenged Jury Findings
            The Department next complains that the evidence does not support the jury's verdict. The jury
found the Department negligent in response to the following question. It reads (in part) as follows:
Did the negligence, if any, of [the Department] proximately cause the collision
in question?
 
                        . . . .
 
"Negligence" with regard to the Texas Department of Transportation means
that, with respect to the condition of trees, underbrush and obstruction of view on the
State's right-of-way of oncoming traffic at the site of the accident:
a. There existed a condition that posed an unreasonable risk of harm
for the ordinary users of the roadway in question;
b. The Texas Department of Transportation had actual
knowledge of the dangerous condition, if any, and
c. The Texas Department of Transportation, within a
reasonable period of time after it acquired actual knowledge of such
condition, failed to warn of the condition and failed to make such
condition safe.
 
(Emphasis added.) The jury found the Department and Haley negligent, and assessed negligence at
sixty percent to the Department and forty percent to Haley. The Department contends there is legally
or factually insufficient evidence to support the verdict, as to these components: (1) unreasonable risk
of harm, (2) failure to warn, and (3) proximate cause.
            In determining a no-evidence issue, we are to consider only the evidence and inferences that
tend to support the finding and disregard all evidence and inferences to the contrary. Bradford v.
Vento, 48 S.W.3d 749, 754 (Tex. 2001); Cont'l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450
(Tex. 1996). Anything more than a scintilla of evidence is legally sufficient to support the finding. 
Cazarez, 937 S.W.2d at 450. When considering a factual sufficiency challenge, we consider and
weigh all of the evidence, not just that evidence which supports the verdict. Mar. Overseas Corp. v.
Ellis, 971 S.W.2d 402, 406–07 (Tex. 1998). We can set aside the verdict only if it is so contrary to
the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. Id.; Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986).
            (1) The Finding of Unreasonable Risk of Harm Is Supported by Sufficient Evidence
            The Department first argues the Plaintiffs did not provide evidence of an unreasonable risk
of harm. In setting up its argument, it focuses on its own expert's testimony, which was essentially
that, if the driver had gone past the stop bar to the very edge of the intersection and then stopped, he
would have been able to see a sufficient distance down the road. The Plaintiffs' expert relied on sight
line minimums as set out by the A.A.S.H.T.O. design information, which showed the distance that
was necessary for safety, and in extensive testimony, he explained the necessity for the sight lines
to be of that length. Briefly, the sight lines are designed for two purposes: to allow the stopped
driver to assess whether he or she could enter the roadway safely, and to allow the oncoming traffic
to see the entering traffic in time to stop, if necessary. By allowing the trees to grow until they
blocked the sight lines, the Department frustrated both of these purposes.
            Further, it is clear that statutes require a driver to stop at the stop sign/stop bar.


 Despite the
Department's intimations, there is no statute requiring a second stop beyond that point or requiring
that drivers "creep through" an intersection, save only for the general duty to drive safely and to yield
to oncoming traffic.
            In summary, the Plaintiffs provided evidence that the sight line, because of the growth of the
vegetation, provided less than one-third of the recommended visibility and that the visibility was so
limited that drivers had insufficient reaction time, even if they obeyed the law by stopping at the stop
bar and then pulling out, thinking they were clear. The Department introduced evidence that the
length of the line of sight improved as a vehicle pulled closer to the road. While that is logical, it
does not require a different jury finding. The evidence is legally and factually sufficient to support
the jury's finding of unreasonable risk of harm.
            (2) The Finding of Failure To Warn Is Supported by Sufficient Evidence
            The Department also argues that the evidence is insufficient to support the jury's conclusion
that the Department failed to adequately warn drivers of the condition and failed to make the
condition reasonably safe. The Department essentially says that, since there was a stop sign and a
blinking light, that was warning. We agree that those were warnings, but they appeared to be
warning of the presence of a requirement that motorists stop and that an intersecting road was ahead. 
There were no warnings about the specific claim in this case, which was the inability to see far
enough down the intersecting road. Further, there is evidence from which the jury could conclude 
Haley heeded the warnings and obeyed the state-mandated requirement to stop, at the point where
the Department had decided he needed to stop.
            At most, the fact that Haley could have seen further had he pulled further out and stopped
again suggests his possible negligence. That is consistent with the fact that the jury allocated forty
percent negligence to Haley.
            There is factually and legally sufficient evidence to support the jury's finding on failure to
warn.
            (3) The Finding of Proximate Cause Is Supported by Sufficient Evidence
            The Department finally argues that the evidence does not support the jury's finding that the
Department's negligence was a proximate cause of the injuries. Proximate cause may be proven by
either direct or circumstantial evidence, but it cannot be based on conjecture, guess, or speculation.
Marathon Corp. v. Pitzner, 106 S.W.3d 724, 727 (Tex. 2003); Doe v. Boys Clubs of Greater Dallas,
Inc., 907 S.W.2d 472, 477 (Tex. 1995); Loram Maint. of Way, Inc. v. Ianni, 141 S.W.3d 722 (Tex.
App.—El Paso 2004, no pet.). Proximate cause consists of two elements, cause-in-fact and
foreseeability. Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996); Doe, 907 S.W.2d at 477. We
therefore examine the record to determine whether there is legally and factually sufficient evidence
to support an affirmative finding on each of these two elements.
            Cause-in-Fact. Cause-in-fact is established when there is evidence that the act or omission
was a substantial factor in bringing about the injuries, and without it, the harm would not have
occurred. IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 799 (Tex.
2004); Read v. Scott Fetzer Co., 990 S.W.2d 732, 737 (Tex. 1998).
            The Department's argument on cause-in-fact is more of a "sole proximate cause" argument
than one based on proximate cause alone.


 It suggests that, because there was nothing to show that
the trees caused the accident, cause-in-fact is not supported by the evidence. This is an incorrect
application of the standard to the facts. There is evidence that a jury could review to conclude the
uncut trees were a substantial factor in bringing about the injury. The evidence indicates that Haley's
pickup truck was moving quite slowly when it came into the line of traffic, that Haley had no time
to avoid the accident, and that the driver of the tractor-trailer truck likewise had no opportunity to
avoid the accident, each of which could be attributed by the fact-finder, at least in part, to the
Department's failure to cut the vegetation on the right-of-way. Whether a particular act of negligence
is a cause-in-fact of an injury is a particularly apt question for jury determination. Farley v. MM
Cattle Co., 529 S.W.2d 751, 756 (Tex. 1975); Wyatt v. Longoria, 33 S.W.3d 26, 32 (Tex. App.—El
Paso 2000, no pet.). The evidence is legally and factually sufficient to support the jury's
determination on the cause-in-fact element of proximate cause.
            Foreseeability. Foreseeability requires that a person of ordinary intelligence should have
anticipated the danger created by a negligent act or omission. Read, 990 S.W.2d at 737; Doe, 907
S.W.2d at 478. The foreseeability element requires only that the general danger be foreseeable, not
the precise sequences of events that produced the harm. Lee Lewis Constr., Inc. v. Harrison, 70
S.W.3d 778, 785 (Tex. 2001).
            The Department's argument that the accident was not foreseeable is largely based on the fact
that there was no evidence of prior accidents in that location and that, therefore, any suggestion the
accident was foreseeable was nothing more than "conjecture, guess or speculation." Although lack
of accident history can be considered by the jury, it is not controlling.
            The danger of injury is foreseeable if its general character might reasonably have been
anticipated. Doe, 907 S.W.2d at 478. The question of foreseeability, and proximate cause generally,
involves a practical inquiry based on common experience applied to human conduct. Id.; City of
Gladewater v. Pike, 727 S.W.2d 514, 518 (Tex. 1987). It asks whether the injury "might reasonably
have been contemplated" as a result of the defendant's conduct. Doe, 907 S.W.2d at 478; McClure
v. Allied Stores of Tex., Inc., 608 S.W.2d 901, 903 (Tex. 1980).
            As previously set out, there was clear and uncontroverted evidence that, because of the
vegetation growth, the sight line from the stop bar (where the driver is required by law to stop) was
less than one third of the amount that is considered necessary by the national engineering standards
for such a situation. The basis underlying those computations was explained by the expert witnesses
and was not controverted. The Department's only argument was not that the sight line from the stop
bar was adequate, but instead that the sight line should have been measured from a different point,
closer to the intersection.
            The evidence was legally and factually sufficient to support a finding that the result was
foreseeable. We overrule the evidentiary contentions of error.
(C) Admitting Evidence of Subsequent Remedial Measures Was Harmless Error
            The Department finally contends the trial court committed reversible error by admitting
evidence the Department had, after the accident, cut down the trees which had grown up in the right-of-way. Rule 407 of the Texas Rules of Evidence limits the admissibility of evidence of subsequent
remedial measures, so that a fact-finder will not consider them as proof of negligence. Brookshire
Bros. v. Lewis, 911 S.W.2d 791, 797 (Tex. App.—Tyler 1995, writ denied). Thus, evidence of
remedial measures taken after an accident are ordinarily inadmissible, but such evidence need not
be excluded if it is offered for another legitimate purpose. Tex. R. Evid. 407(a); Hagins v. E-Z Mart
Stores, Inc., 128 S.W.3d 383, 393 n.4 (Tex. App.—Texarkana 2004, no pet.).
            The evidence at issue consists of portions of depositions of Department employees discussing
the Department's post-accident cutting of the trees and photographs depicting the terrain Haley would
have had to look across to see the approaching tractor-trailer truck as the two vehicles approached
the intersection just before the accident—as that terrain appeared after the trees were removed, post-accident. Plaintiffs' counsel argued, pretrial, that the Department employees had stated there was
no difference in the sight line with or without the trees, and therefore sought to introduce the
additional evidence to impeach those statements. After hearing the argument of counsel, the trial
court indicated that it would admit the evidence for the sole purpose of impeaching the deposition
testimony of Clyde Matthews, a maintenance supervisor for the Department, and also noted that
Matthews could not be impeached until he had first testified. At the beginning of trial, the trial court
heard argument concerning the contents of a booklet of anticipated exhibits Plaintiffs wished to
distribute to each juror. At that time, the Department specifically objected to Plaintiffs' Exhibits 19,
26, and 28, which were photographs showing the site after the vegetation had been cut, copies of
which photographs were included in Plaintiffs' jury booklets. Plaintiffs' Exhibits 19, 26, and 28 were
admitted at that time, for the sole purpose of impeaching Matthews' testimony and in anticipation
of his testimony. The Department then sought, and was granted, a running objection to any and all
evidence depicting the subsequent remedial measures. The exhibit booklet was distributed to jurors
after opening arguments. 
            During their case-in-chief, Plaintiffs read excerpts from Matthews' deposition into the record. 
After Matthews' deposition excerpts were read, various exhibits were admitted. Among those,
Exhibit 26 was again admitted, this time after the Department, asked if it had any objection,
affirmatively said "none." Then, Exhibit 28 was again admitted with an affirmatively stated "no
objection" from the Department. At trial, Matthews never testified in person, and the only excerpts
from his deposition read into the record were tendered by Plaintiffs.
            In its motion for new trial, the Department complained that the trial court had abused its
discretion in admitting the evidence of subsequent remedial measures "because evidence of
subsequent remedial measures was not admissible and the admission probably caused the rendition
of an improper judgment." In its brief on appeal, the Department makes its arguments regarding the
subsequent remedial measures in just over four pages. Most of the Department's argument asserts
the Plaintiffs' purpose in trying to introduce the subsequent remedial measures into evidence was not
really impeachment, but proof of negligence. In one phrase on page 31 of its brief, however, the
Department cites an Alabama case for the proposition that such evidence was not admissible as
impeachment "unless the . . . testimony a party seeks to impeach was initiated by the defendant, and
the testifying witness had some control over the subsequent repair or alteration." Blythe v. Sears,
Roebuck & Co., 586 So.2d 861, 864 (Ala. 1991). The phrase is not commented on or urged beyond
the quoted phrase, and the case is not applied to the present facts that Matthews' testimony was
submitted by the Plaintiffs. At oral argument, the Department asserted that Plaintiffs improperly
impeached the very testimony they tendered. Although a party can waive an issue by failing to
properly brief it, see Tex. R. App. P. 38.1(h); Dallas Firefighters Ass'n v. Booth Research Group,
Inc., 156 S.W.3d 188, 196 (Tex. App.—Dallas 2005, pet. denied), because the Department's brief
touches on the issue, we will address it.
            Evidence of subsequent remedial measures should not have been admitted to impeach
Matthews, since Plaintiffs tendered his testimony. Rule 607 of the Texas Rules of Evidence permits
the credibility of a witness to be attacked by any party, including the party calling the witness. Tex.
R. Evid. 607; Hughes v. State, 4 S.W.3d 1, 5 (Tex. Crim. App. 1999). But a party may not call a
witness primarily for the purpose of impeaching him or her with evidence that would otherwise be
inadmissible. Montoya v. State, 65 S.W.3d 111, 114 (Tex. App.—Amarillo 2000, no pet.); see
Armstead v. State, 977 S.W.2d 791, 795–96 (Tex. App.—-Fort Worth 1998, pet. ref'd), citing Barley
v. State, 906 S.W.2d 27, 37 n.11 (Tex. Crim. App. 1995). But that does not end our inquiry.
            When a party affirmatively asserts during trial that he or she has "no objection" to the
admission of the complained-of evidence, any error in the admission of the evidence is waived, even
in the face of a pretrial ruling. Tex. R. App. P. 33.1; Moraguez v. State, 701 S.W.2d 902, 904 (Tex.
Crim. App. 1986); accord Sands v. State, 64 S.W.3d 488, 491 (Tex. App.—Texarkana 2001, no
pet.).
            Plaintiffs' Exhibits 26 and 28, both in evidence after the Department's utterance of "no
objection" to them, showed the trees, their location, and the sight lines before and after the trees were
cut. While those two exhibits do not explicitly demonstrate that the Department cut the trees, a
logical deduction was, and the jury could have properly concluded that, the trees, on the Department
right-of-way, had been removed by the Department. The photographs show the view before and after
the trees were cut down after the accident. They could easily be compared to other photographs
depicting the trees present at the intersection the night Haley approached the intersection. Any error
in the admission of testimony is rendered harmless if the objecting party subsequently permits the
same or similar evidence to be introduced without objection. Gee v. Liberty Mut. Fire Ins. Co., 765
S.W.2d 394, 396 (Tex. 1989); Dalworth Trucking Co. v. Bulen, 924 S.W.2d 728 (Tex.
App.—Texarkana 1996, no pet.). Thus, the error in admitting other evidence of the subsequent
remedial measures was rendered harmless. We overrule this contention of error.
            We affirm the judgment.
 
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          June 16, 2005
Date Decided:             August 16, 2005