**BROOKSHIRE BROTHERS, INC., Appellant,**

v.

**Billy Ben LEWIS, Appellee.**

No. 12–93–00320–CV.

Court of Appeals of Texas, Tyler.

Oct. 31, 1995.

Rehearing Overruled Dec. 29, 1995.

Steve Roper, Scott C. Skelton, Lufkin, for appellant.

Sid S. Stover, Jasper, for appellee.

RAMEY, Chief Justice.

Brookshire Brothers, Inc. ("BBI"), brings this appeal from a judgment on theories of negligence and premises liability for personal injuries suffered by the Appellee, Billy Ben Lewis ("Lewis"). Lewis was a customer in a store owned by BBI when an automobile driven by Drayton B. Speights ("Speights"), crashed through the front of the store and injured Lewis. Lewis sued BBI and Speights, and a jury found them to be jointly and severally liable for damages in the amount of $115,000, with BBI being assigned 30% of the responsibility for the accident. We will reverse the judgment of the trial court and remand the cause for new trial.

The front wall of the store was constructed of brick veneer and glass, with a sidewalk three feet wide. The curb was less than six inches high at the point where the car went over it. Parking spaces were marked so that the cars would park perpendicularly to the front of the store. The jury determined that BBI was negligent in not providing any barriers or other protecting devices to prevent cars from rolling from the parking spaces into, and potentially through, the storefront. In this appeal, BBI raises six points of error complaining of the sufficiency of the evidence, the propriety of the charge, and the admissability of certain evidence. We will address BBI's sufficiency points first.

In its first two points of error, BBI alleges that the trial court erred in overruling its motions for directed verdict and for new trial because there was no evidence that any acts or omissions of BBI were the proximate cause of the injuries to Lewis. In its third point, BBI claims the evidence was insufficient to support the jury's answer to the first question in the charge, which inquired as to whether the negligence of each of the defendants caused the injury.

■■■ BBI directs its first three points of error, whether on the basis of legal or factual sufficiency, to the issue of proximate causation. More than one action may be a proximate cause of the same injury. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). To recover in a negligence cause of action based on premises liability, the plaintiff must prove the following: (1) that the occupier of the premises had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an unreasonable risk of harm; (3) that the occupier failed to exercise reasonable care to reduce or eliminate the risk; and (4) that such failure proximately caused the plaintiff's injuries. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992).

■■■ A defendant's act or failure to act is a proximate cause of an injury if that act or omission is a "cause in fact" of the event giving rise to the injury and if the event was foreseeable. *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 755 (Tex.1975). To be a cause in fact of an injury, the act or omission must be a substantial factor in the injury's occurrence, without which it would not have happened. *Travis*, 830 S.W.2d at 98. The second element of proximate cause, foreseeability, exists when a reasonable person, a person of ordinary intelligence and prudence, should have anticipated the threat of harm created by his act or omission. *Id.*

When an appellant raises both legal and factual sufficiency challenges, we must examine the legal sufficiency point of error first. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400, 401 (Tex.1981). When, as here, the appellant did not have the burden of proof at trial, a legal sufficiency point of error allows this Court to examine only the evidence and inferences that tend to support the jury's finding while ignoring all evidence to the contrary. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992); *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 459 (Tex.1992). If there is any probative evidence to support the jury's finding, the "no evidence" challenge must be overruled. *In re King's Estate*, 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951).

Here, the jury heard evidence that in the thirteen months prior to the accident there had been five incidents in which vehicles collided with the outer walls of stores owned by BBI; a total of eight such incidents had occurred in the four years previous to this accident. The Hemphill store itself was the site of an incident in which an employee of BBI ran a vehicle into the side of the store, knocking out an estimated forty to fifty bricks. Lewis offered the expert testimony of an architect with experience in designing parking lots to assert that the sidewalk in front of the Hemphill store was not high enough above street level and as much as 18 inches too narrow to act as an effective barrier or wheel-stop. The expert testified that the safety of patrons within the store should be considered when designing a parking lot. Additionally, Lewis presented evidence to suggest that there were cost-effective safety measures available to BBI to protect its customers from cars colliding into its stores.

In light of the foregoing evidence, BBI's legal sufficiency challenge must fail. The jury heard evidence that certain cost-effective barriers existed and would have stopped a car from crashing through the front wall. Had such barriers been in place, the expert claimed that Lewis would not have been injured, so the lack of barriers can be said to be a cause in fact of the accident. The evidence of similar accidents at other stores owned by BBI, as well as the Hemphill store itself, could have led the jury to the conclusion that a reasonable person would have foreseen the danger posed by a vehicle crashing into the store. Because Lewis presented probative evidence to suggest that BBI's omission of any type of barrier was a proximate cause of his injuries, we must overrule BBI's first two points of error. *See Id.*

In its third point of error, BBI contends that the evidence offered by Lewis was factually insufficient to support the element of proximate causation. A different standard applies when the challenge goes to the factual sufficiency of the evidence and the appellant did not have the burden of proof on that issue at trial. In such a case, having considered all of the evidence for and against the jury's finding, the court of appeals must affirm the verdict unless it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Id.*; *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985).

BBI argues that the accident in which Lewis was injured was not foreseeable, asserting that only one of the collisions introduced by Lewis involved a car actually going through an outer wall and into a store while the other incidents involved minor damage to bricks in the walls or the cars' headlights. BBI also presented statistical evidence to emphasize the remoteness of the probability of such accidents occurring at any one of its stores, considering the thousands of customers who enter each store in a month and the number of cars that utilize the parking lots. One BBI employee testified that customer-owned vehicles entered the parking lot of the Hemphill store as many as 10,000,000 times in the preceding twenty years.

In its argument on the issue of foreseeability, BBI cites cases for the proposition that an occupier of premises has no duty to protect invitees from dangers that, in the light of common or ordinary experience, the occupier cannot reasonably foresee. The cases which are factually similar to the instant case may be distinguished only with difficulty.

In *Watkins v. Davis*, 308 S.W.2d 906 (Tex. Civ.App.—Dallas 1957, writ ref'd n.r.e.), the court of appeals held that a similar accident was not sufficiently foreseeable for the store

owners to be found negligent for failing to place a curb in front of the store to act as a wheel-stop. The court concluded that such an accident is foreseeable only when it is brought about by actual defects in the premises or occurs as a result of the ordinary use for which the premises were designed. *Id.* at 909 (citing *City of Dallas v. Maxwell,* 248 S.W. 667 (Tex.Comm'n App.1923, holding approved)). In reaching its holding, the court further observed that the lack of a curb in no way contributed to the forward movement of the truck in question and that holding the occupier of premises liable in such a situation "would render [him] an absolute insurer of [the plaintiff's] safety as an invitee on the former's store premises." *Id.*

The facts surrounding the accident in which Lewis was injured may be distinguished from those in *Watkins,* and we cannot say that the *Watkins* holdings render BBI's argument unassailable. The parking spaces in front of BBI's Hemphill store abutted the front curb of the store perpendicularly, and any patron parking in those spaces would be moving in a forward direction toward the store with only a low curb between the car and the front wall of the store. That wall was non-loadbearing and made of brick veneer and glass and was the only separation, besides the short curb and sidewalk, between parking cars and the entrance area of the store. Any driver who for a variety of reasons failed to stop soon enough when parking could endanger store patrons.

In *Hendricks v. Todora,* 722 S.W.2d 458 (Tex.App.—Dallas 1986, writ ref'd n.r.e.), the Dallas Court of Appeals faced this type of claim again. After a drunk driver drove his car into and through a glass and metal wall of a restaurant, certain customers who were injured in the accident sued the restaurant owners. The lower court granted summary judgment for the owners, ruling that they owed no duty to the customers to protect them from an unforeseeable accident brought on by the reckless, criminal act of a third party. *Id.* at 459. The restaurant shared a parking lot with several other establishments, all of which were apparently equally vulnerable to the reckless conduct of the driver. The court of appeals held "as a matter of law that no reasonable occupier of land, situated as was the lessor in this case,

would go to the expense of erecting barriers around all the buildings adjacent to the parking lot to prevent such an extraordinary and unforeseen occurrence." *Id.* at 462. The court stressed that the customers did not present any summary judgment evidence to show that any similar accidents had ever occurred in that parking lot or that any drivers had been stopped for driving recklessly, erratically or while intoxicated. *Id.* at 463. Also, the driver was convicted of aggravated assault, which authorized the court to follow a line of authorities "holding that an occupier of land is not liable to an invitee for a sudden and unexpected criminal attack when there has been no history of other violent crimes in the area." *Id.*

In the instant case there was no criminal activity, and the parking lot in question was not shared with other establishments. The lot was designed and maintained by BBI and had been designed so that the parking spaces nearest the storefront were perpendicular to it and abutted a sidewalk that was less than six inches high and thirty-six inches wide. Here, there was no unexpected or extraordinary conduct until the moment when the driver went over the curb. Until then, he was using the parking lot and space in the manner for which it was designed.

Considering the evidence here, we cannot conclude that the evidence supporting the jury's findings of foreseeability and negligence was so weak as to make those findings clearly wrong and manifestly unjust. We must therefore overrule BBI's third point of error.

■ In its fourth point of error, BBI asserts that the trial court erred by allowing Lewis to present evidence of subsequent remedial measures to prove negligence or culpable conduct. Rule 407(a) of the TEXAS RULES OF CIVIL EVIDENCE governs this question and provides that evidence of subsequent remedial measures (such as repairs which would have made the accident in question less likely to happen) is inadmissible "to prove negligence or culpable conduct." Such evidence may be admitted, however, when it is "offered for another purpose, such as proving ownership, control or feasibility of precautionary measures, if controverted, or im-

peachment." Tex.R.Civ.Evid. 407(a). By following this long-standing rule, the courts hope to avoid discouraging the implementation of safety measures after accidents which make the need for such measures clear. *See Roosth and Genecov Production Co. v. White,* 152 Tex. 619, 262 S.W.2d 99, 104 (1953), *overruled on other grounds,* 616 S.W.2d 911, 925 (1981).

One of Lewis' expert witnesses, an architect who had designed several parking lots, testified that BBI had erected "bollards," concrete-filled, steel pipes set vertically in front of parking spaces, at its store in San Augustine, Texas; the record reveals that the San Augustine store was built in March of 1993, some eight to nine months after the accident in question. Three photographs depicting the placement of the bollards around BBI's San Augustine store were admitted in evidence. The expert testified that such barriers would have stopped Speight's car from entering the store.

Two employees of BBI also testified concerning the bollards installed at the San Augustine store. One stated that the accident in which Lewis was injured was a factor in the decision to install the bollards there. The other employee testified that the landlord of the San Augustine store had designed and erected the bollards when he built the store specifically for BBI to lease. Those bollards were four inches in diameter and removable, but he mentioned that BBI was in the process of installing six-inch, permanent bollards at other stores.

 Such testimony clearly concerned subsequent remedial actions on the part of BBI; however, Lewis claims that the evidence was offered not to prove negligence but to prove the feasibility of precautionary measures. Rule 407(a) allows the admission of such evidence if the party's opponent has undertaken to controvert the feasibility of precautionary measures. Tex.R.Civ.Evid. 407(a). Lewis maintains that BBI denied the feasibility of any protective devices to prevent an accident such as the one in which Lewis was injured and cites eight pages of the statement of facts to support his claim. After reviewing the pages cited, we find no evidence introduced by BBI to challenge the feasibility of protective measures such as the bollards installed at BBI's San Augustine store. Most of the cited testimony contains no reference to barriers of any kind; instead, it merely refers to the paucity of evidence of similar accidents at stores owned or operated by BBI.

Lewis relies upon the testimony of the manager of the Hemphill store, a fact witness called by Speights, BBI's codefendant in this case. In response to questioning by BBI's attorney, he testified that he did not believe that a certain type of wheel-stop, one six inches high and eight feet long, would have stopped the car in this case from entering the store and that such wheel-stops might have impeded the flow of traffic in the store's parking lot.

Concerning the steel-and-concrete bollards, during direct examination by Speights' attorney, the manager testified that both the bollards and the six-inch high wheel-stops would be economically feasible for BBI to install in its parking lots. He also stated that he could not be certain whether bollards would have stopped Speights' car from entering the store. Nowhere, however, does BBI present evidence to refute the feasibility of bollards as protective or precautionary measures, either as to their cost or efficacy. We hold that the store manager's remarks regarding the inadequacy of wheel-stops did not address the feasibility of bollards as parking lot barriers. In fact, as noted, the manager of the store in Hemphill testified that it would indeed be feasible for BBI to install bollards in front of its stores.

Lewis further contends that the evidence regarding subsequent use of bollards by BBI was admissible because they were placed in front of a different store owned by BBI. Lewis attempts to distinguish the cases cited by BBI to support its contention that the admission of the evidence violated Rule 407(a) by pointing out that all of the cited cases involve subsequent remedial measures which were put into place on the same premises in which injuries occurred. This is no distinction. Whether the decision was made by BBI or by the landlord who built the leased building specifically for BBI, the post-accident installation of safety devices at one of its other stores is still a subsequent remedial improvement on the part of BBI.

■ Finally, Lewis argues that because the bollards introduced into evidence were not erected by BBI but by the landlord from whom BBI leased the San Augustine premises (BBI owned the premises of the Hemphill store), the evidence of their use after the accident does not violate Rule 407(a). Lewis relies upon a decision of the Amarillo Court of Appeals, and federal cases cited by it, to argue that evidence of subsequent remedial measures made by a third party may be admitted into evidence because the policy behind Rule 407 is not relevant in such cases. *Beavers v. Northrop Worldwide Aircraft*, 821 S.W.2d 669, 676–677 (Tex.App.—Amarillo 1991, writ denied). Rule 407(a) embodies the well-established policy that parties should not be discouraged from making safety improvements after an accident because those improvements may be used against them as evidence of their own negligence. *Id.* at 676; *Roosth and Genecov Production Co.*, 262 S.W.2d at 104.

Lewis misinterprets the relevant holding of the *Beavers* decision. The issue confronting that court was "whether subsequent remedial measures taken by a third party are admissible as indicating that the negligence of *the third party*, rather than that of a party to the case, might have been responsible for the occurrence giving rise to the suit." *Beavers*, 821 S.W.2d at 676–677 (emphasis added). Here, no one contends that the landlord of the San Augustine store might have been negligent in any way, certainly not so as to shift liability onto himself for an accident occurring at the Hemphill store. In fact, the court in *Beavers* distinguishes the issue before it from a situation such as that confronting BBI by referring to one of its own, earlier decisions, in which it held in favor of a defendant in BBI's position. In *Burnett v. Rutledge*, 284 S.W.2d 944 (Tex.Civ.App.—Amarillo 1955, writ ref'd n.r.e.), the court of appeals held that evidence of a third party's subsequent remedial measures was inadmissible when offered to show that the *defendant* was negligent. *Burnett* at 949.

The evidence that bollards were erected by the landlord of the San Augustine store after the accident at the Hemphill store was inadmissible unless it was intended to address a refutation of their feasibility by BBI. As we have explained, it was not so intended. Proof of the subsequent remedial measures should not have been allowed.

There remains the question of whether the error requires reversal. The error complained of must amount to such a denial of BBI's rights as was reasonably calculated to cause and probably did cause rendition of an improper judgment. TEX.R.APP.P. 81(b)(1).

■ We are disinclined to reverse a case on a trial court's evidentiary ruling. Here, however, the central disputed issue was whether barriers should have been erected to prevent damages to customers from vehicles that might crash into BBI's store. BBI's defense was that it had no duty to guard against such danger because such occurrences are so rare that they could not be reasonably foreseen in the light of ordinary experience. Here, the court improperly allowed testimony and photographs of a BBI store in which the specific barriers recommended by Lewis' expert were used. This evidence strikes at the heart of BBI's defense; it was a graphic acknowledgment of the validity of Lewis' contention and a refutation of its own position as used at one of its own stores. It was a recognition of the very concern BBI had contended throughout the trial to be rare, extraordinary and not foreseeable. Foreseeability of the risk and proximate cause being close issues, we hold that the admission in evidence of these subsequent remedial measures was reasonably calculated to eviscerate BBI's principal position in the case and was harmful.

Accordingly, we sustain BBI's fourth point of error. In doing so, we need not address the remaining two points of error.

The judgment of the trial court is reversed and remanded for a new trial.