**Opinion filed January 29, 2010**



# In The

# Eleventh Court of Appeals

_____

## No. 11-08-00014-CV

_____

## CHRISTUS HEALTH SOUTHEAST TEXAS D/B/A CHRISTUS ST. ELIZABETH HOSPITAL, Appellant

## V.

## FLO WILSON AND JAMES WILSON, Appellees

### On Appeal from the 60th District Court

### Jefferson County, Texas

### Trial Court Cause No. B-175,570

## O P I N I O N

Flo and James Wilson sued Christus Health Southeast Texas d/b/a Christus St. Elizabeth Hospital for injuries Flo sustained when she slipped and fell in a hospital parking garage. The jury found that St. Elizabeth and Flo Wilson were both negligent. The jury allocated 50% of the negligence to St. Elizabeth, 30% of the negligence to Flo, and the remaining 20% to a settling defendant. The jury also found that Flo sustained damages of $795,000. The trial court reduced this

award to reflect Flo's negligence and St. Elizabeth's settlement credit, and it entered judgment accordingly. We affirm.

## I. *Background*

Christus Health operated St. Elizabeth Hospital. In 2002, St. Elizabeth built a parking garage that was known as the Calder or West garage. Allco served as the building contractor. The garage had five levels and four stairwells. There was a landing at the stairwell entrance on each level. Visitors walking from their cars to the stairs stepped up onto the landing, and visitors walking from the stairs to their cars stepped off it. The plans for the garage called for the steps to be painted with a six-inch yellow stripe on the top and side; however, Allco failed to paint the steps, and St. Elizabeth failed to notice it.

In 2005, Flo went to St. Elizabeth's to visit her sister-in-law. She parked on the second level of the garage and took the elevator to the first floor. After her visit, Flo returned to the garage. The elevator was out of service, and she took the stairs to the second level. After exiting the staircase, Flo failed to see the landing step, and she fell and injured herself.

## II. *Issues*

St. Elizabeth challenges the judgment with four issues, contending that the evidence is legally or factually insufficient to support the jury's negligence finding, that the trial court erred by not including a settling tortfeasor in the negligence question, and that the trial court also erred by permitting evidence of a subsequent remedial measure.

## III. *Discussion*

*A. Premises Liability.*

Property owners owe a duty to their invitees to exercise reasonable care to protect them from dangerous conditions on the premises that are known or discoverable by the owner. *Wal-Mart Stores, Inc. v. Surratt*, 102 S.W.3d 437, 441 (Tex. App.—Eastland 2003, pet. denied). This duty does not make the owner an insurer of the invitee's safety. *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998). Instead, the invitee must establish that the owner knew or should have known of a dangerous condition on the premises that presented an unreasonable risk of harm and that this condition proximately caused the invitee's injury. *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970).

2

St. Elizabeth argues that the evidence is legally insufficient, contending that there was no evidence that it had knowledge of a condition posing an unreasonable risk of harm, that there was no evidence that a condition imposing an unreasonable risk of harm existed, and that there was no evidence its actions were the proximate cause of Flo's injury.

### 1. Standard of Review.

In considering a legal sufficiency challenge, we review all the evidence in the light most favorable to the prevailing party and indulge every inference in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit any favorable evidence if a reasonable factfinder could and disregard any contrary evidence unless a reasonable factfinder could not. *Id*. at 821-22, 827. We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id*. at 810.

In reviewing a factual sufficiency challenge, we consider all of the evidence and uphold the finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). Appropriate deference must be given to the jury's determination, especially concerning its judgment on the weight and credibility of witness testimony because it is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Nat'l Freight, Inc. v. Snyder*, 191 S.W.3d 416, 425 (Tex. App.—Eastland 2006, no pet.).

### 2. Knew or Should Have Known.

St. Elizabeth does not dispute that it knew, or at least should have known, that the curb was unpainted. James Pearson, St. Elizabeth's director of plant services, testified that the plans for the garage required that the area where Flo fell be painted but that it was not. He agreed that he should have noticed this. Instead, St. Elizabeth contends that it had no notice that an unpainted step constituted a dangerous condition, and it points to testimony that, prior to Flo's fall, there were no reported incidents in the parking garage's stairwells. The Wilsons contend that the garage's blueprints and evidence of other falls in the garage constituted notice.

3

The jury heard from John McGinty, an architect retained by the Wilsons as an expert but called as a witness by St. Elizabeth, to establish that Allco breached the construction contract by not painting the curb. After St. Elizabeth completed its examination, McGinty testified in response to the Wilsons' questions that "there had been a prior accident at this location, or in the garage, at a similar location." Pearson also testified that he was aware of people falling off unpainted curbs in the garage prior to Flo's injury. Pearson testified that curbs are painted to highlight elevation changes. The area where Flo fell was painted after her fall, and to Pearson's knowledge, no one has fallen since.

St. Elizabeth contends that this testimony is insufficient to prove notice because Pearson was not asked to describe the curbs' heights, their location, or the circumstances of the prior incidents. St. Elizabeth directs us to the supreme court's decision in *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 143 (Tex. 2004), for the proposition that, without this evidence, Pearson's testimony is no evidence. *Armstrong* was a products liability action involving allegations of a stuck throttle in a 300ZX. The claimant offered the testimony of four individuals who claimed that they had experienced unintended acceleration events in their 300ZXs. *Id.* The court noted that the witnesses could not identify the defect that caused their unintended acceleration; that one had been sanctioned for filing a frivolous suit; and that, in two incidents, the cars had been examined by the individual's expert or by an independent governmental agency and no defect identified. *Id.* The court found that, because none of the witnesses could verify a defect as the cause of their unintended acceleration, it was error to allow their testimony. *Id.*

We agree that merely because other people had fallen in the garage is no evidence that the hospital was on notice that unpainted curbs constituted an unreasonably dangerous condition. However, we disagree that *Armstrong* stands for the proposition that the Wilsons failed to produce any evidence of notice. In a no-evidence review, we must view the evidence in the light most favorable to the Wilsons. *City of Keller*, 168 S.W.3d at 822. The Wilsons contended that the unpainted curb was unreasonably dangerous because Flo had inadequate notice of an elevation change. The fact that others had also fallen off unpainted curbs in the garage is some evidence people were not noticing the elevation change. The jury, therefore, had legally sufficient evidence with which to conclude that the hospital had notice of a potentially dangerous condition.

4

### 3. Unreasonably Dangerous Condition.

St. Elizabeth next argues that an unpainted curb cannot constitute an unreasonably dangerous condition as a matter of law, pointing to recent supreme court decisions such as *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161 (Tex. 2007). The Wilsons respond that whether something is an unreasonably dangerous condition is inherently a fact question.

The supreme court defines an unreasonably dangerous condition as "one in which there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Seideneck*, 451 S.W.2d at 754. This definition precludes a definitive, objective test. *Id.* Consequently, the Wilsons are correct to the extent that whether a condition is unreasonably dangerous is ordinarily a fact question. It would be a mistake, however, to assume that this makes any fact finding preclusive.

The supreme court has found conditions were not unreasonably dangerous as a matter of law. For example, in *Seideneck*, the court held that a showroom rug was not unreasonably dangerous relying upon evidence that no one had previously tripped on it and upon the lack of evidence that the rug was defective or unusual. *Id.* at 754-55. In *Brinson*, the court held that a pedestrian ramp was not an unreasonably dangerous condition as a matter of law. The court noted that the ramp met applicable safety standards; that it "was further outlined in yellow stripping that the dealership added, which is a common method used to indicate a change in elevation"; that the highest unrailed portion was lower than an average step; and that no one had been injured on the ramp in over ten years. *Brinson*, 228 S.W.3d at 163.

There is no dispute that the hospital's parking garage complied with the applicable building codes, even though the curb was unpainted, and St. Elizabeth correctly notes that the mere fact that something can be made safer is insufficient to make a condition unreasonably dangerous. *See Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408 (Tex. 2006) (a condition is not unreasonably dangerous simply because it is not foolproof).[1] In *Taylor*, a piece of ice on the floor was not an unreasonably dangerous condition because the store had no knowledge of its presence.

---

[1] Similarly, see *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996) (because motel had no knowledge of a dangerous condition, any premises liability claim predicated upon negligent maintenance, a failure to warn, or absence of safety devices is barred).

5

*Id.* at 409. The court held that this lack of notice precluded any duty to take preventive measures such as placing additional mats on the floor. But that was not the case here. St. Elizabeth did have notice that people had fallen off unpainted curbs in the garage. Furthermore, McGinty testified that the curb should have been painted because there were two similar materials in a path of traffic and, therefore, people needed a warning that there was an elevation change. These factors distinguish the present case from both *Seideneck* and *Brinson*. The jury did, therefore, have legally sufficient evidence with which to conclude that the unpainted curb was an unreasonably dangerous condition.

### 4. Proximate Cause.

Proximate cause consists of two factors: cause-in-fact and foreseeability. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). The test for cause-in-fact is whether the negligent act or omission was a substantial factor in bringing about the injury and without which the injury would not have occurred. *Id.* Cause-in-fact must be proved by evidence of probative force and not by mere conjecture, guess, or speculation. *Leitch v. Hornsby*, 935 S.W.2d 114, 119 (Tex. 1996). The evidence must be sufficient for the jury to determine within a reasonable probability that the plaintiff's injury would not have occurred without the defendant's negligence. *Lenger v. Physician's Gen. Hosp., Inc*, 455 S.W.2d 703, 706 (Tex. 1970). Cause-in-fact is established when the act or omission was a substantial factor in bringing out the injuries, and without it, the harm would not have occurred. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). If the defendant's actions merely furnished a condition that made the injuries possible, there can be no cause-in-fact. *Id.*

St. Elizabeth contends that there was no evidence that the failure to paint the curb was the proximate cause of Flo's injury because the Wilsons' testimony is speculative. St. Elizabeth contends that the Wilsons were required to produce evidence that paint attracts the attention of someone such as Flo. St. Elizabeth argued at trial that Flo was contributorily negligent, and the jury attributed 30% of the responsibility to her. On appeal, St. Elizabeth notes that people fall for a number of reasons, many of which are unrelated to visibility issues, and suggests that the Wilsons had the obligation to exclude these or to otherwise establish that a painted curb would have prevented her fall.

6

The Wilsons direct us to Flo's testimony that she would have seen a yellow stripe and that this would have prevented her fall. They also highlight Rogers Jones's testimony. He was a Baptist pastor who went to St. Elizabeth's frequently and was familiar with the parking garage. Pastor Jones testified that there was a platform coming out of the stairwell, that there was an elevation change between the platform and the floor, and that there was nothing to highlight this change in elevation. He testified that the curb could be missed, and he stated that painting it would have helped people see the step.

St. Elizabeth is correct that there was no definitive, scientific study of the impact of a painted step and, in fact, that there was evidence that several people had fallen on or off painted curbs. However, the jury did have evidence that painting the curb would have made the step more visible. In fact, the supreme court has noted that this is the common way to alert people to elevation changes. *See Brinson*, 228 S.W.3d at 163. The jury also had Flo's testimony that a painted curb would have prevented her fall. This is some evidence that Flo fell because she did not see the change in elevation; that a painted curb would have alerted her to this change; and, therefore, that a painted curb would have prevented her fall. Issue One is overruled.

### 5. Factual Sufficiency.

In a factual sufficiency review we consider all of the evidence. *Pool*, 715 S.W.2d at 635. St. Elizabeth distinguishes the other falls in the garage, contending that they were so dissimilar that they do not constitute notice that the unpainted curb was a dangerous condition. Jack Patrick Briggs is responsible for risk management, safety, and security at the hospital. He testified that the hospital had received reports of three other falls in the garage. One occurred when a visitor fell after exiting her car, one occurred when a visitor fell off a curb after exiting the elevator, and the third involved a visitor in a wheelchair tipping over on the ground floor handicap ramp. St. Elizabeth argues that the elevator incident is no notice because the visitor did not complain of visibility. However, Briggs testified that the visitor "came out of the elevator at the Calder garage and didn't see the curb. She fell off of the curb and fell on her right knee." Thus, even St. Elizabeth's evidence established one prior fall off an unpainted curb. Combined with Pearson's and McGinty's testimony referencing other falls off curbs and Pearson's testimony that he should have noticed that the curbs had not been

7

painted as required, the jury had factually sufficient evidence that the hospital had notice of a potential premises defect.

The jury also had sufficient evidence with which to conclude that this was, in fact, an unreasonably dangerous condition. St. Elizabeth correctly notes that the garage met the applicable code, and there was evidence that Flo was negligent for not paying sufficient attention – particularly since she had successfully navigated other curbs in the garage the day of her fall. But St. Elizabeth's own witnesses conceded that curbs were painted to alert people to elevation changes and to prevent or minimize the risk of falls. McGinty testified that a warning was needed in this case because the landing and parking garage floor were made of similar materials. This would make it more difficult to see the change in elevation and, therefore, would create the need for something such as a change in color to serve as a warning.

This risk was highlighted by the fact that people had fallen off unpainted curbs prior to Flo's fall and that no one had fallen since the curbs were painted. St. Elizabeth correctly notes that it challenged this evidence by discussing the specifics of the three reported falls and, in the process, by distinguishing them. But in light of McGinty's and Pearson's testimony, the jury was not required to conclude that these were the only falls. There was also evidence that Charles English subsequently fell at the same spot. Furthermore, it was undisputed that the plans called for the curbs to be painted in the first instance. We do not hold that this would be notice in all instances. But because the hospital witnesses conceded that they should have noticed Allco had failed to paint the curbs, it is evidence in this case.

The evidence also sufficiently establishes proximate cause. St. Elizabeth admitted in response to requests for admission that the curb was painted to provide notice of possible tripping hazards. Pearson testified that the curb would have been more visible if it had been painted. Briggs agreed that a painted curb would have given someone a better opportunity to see the elevation change. Finally, Flo testified that she thought she would have noticed the curb if it had been painted.

Because there is no objective test for determining whether a particular condition is unreasonably dangerous, we must afford the jury's determination appropriate deference. The evidence, considered in its totality, is not so weak or so against the overwhelming weight of the evidence as to make the jury's decision manifestly unjust. *Pool*, 715 S.W.2d at 635. The evidence

8

is factually sufficient to support the jury's determination that, in this instance, the unpainted curb was an unreasonably dangerous condition and that it was the proximate cause of Flo's injury. Issue Two is overruled.

B. *Charge Error.*

St. Elizabeth contends that the trial court erred by submitting a negligence question that did not include Allco. The jury charge asked the jury to determine if St. Elizabeth and Flo were negligent. The second question, however, asked the jury to apportion responsibility amongst three parties: St. Elizabeth, Flo, and Allco. The Wilsons respond that any objection was waived because it was obscured or concealed and that any error was otherwise waived because St. Elizabeth represented to the court that it did not contend that Allco had any legal responsibility for Flo's injury.

The last contention is easily dispatched. The Wilsons did not object when St. Elizabeth called their expert, McGinty, as a witness to establish that Allco breached the construction contract by not painting the curb. Nor do the Wilsons complain that the trial court erred by including Allco in the apportionment question. It is also clear that St. Elizabeth properly raised its objection to the exclusion of Allco from the negligence issue and that the trial court was aware of this issue. In fact, the trial court specifically asked the Wilsons' counsel about this and was assured by counsel that the Wilsons were willing to run the risk of not including Allco in the negligence issue. St. Elizabeth has, therefore, not waived its objection to the charge.

Whether Allco breached a duty was raised by the evidence. But this does not establish error because there was, in fact, no dispute that Allco had breached a duty. Because there was no fact question, the trial court did not err by not asking the jury to determine whether Allco was negligent. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992) (a trial court may refuse to submit a jury question when it is not supported by any evidence).

But even if the trial court erred, we reverse for charge error only if, after considering the record as a whole including the pleadings, the evidence presented at trial, and the charge in its entirety, we conclude the error probably caused the rendition of an improper verdict or probably prevented St. Elizabeth from presenting the case to this court. TEX. R. APP. P. 44.1; *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 723 (Tex. 2003). St. Elizabeth has shown no harm. It argues that Allco's responsibility could have been substantially higher than the 20% found by the

jury if the trial court had asked the jury to determine whether Allco was negligent because Allco's negligence was otherwise minimized. We fail to follow this logic. Because the trial court did not ask the jury if Allco was negligent but did ask the jury to determine Allco's percentage of responsibility, this would not minimize Allco's responsibility but would be more likely seen as an indication from the trial court that Allco was negligent. Moreover, St. Elizabeth was not precluded from offering any evidence of Allco's negligence or from making any argument concerning its responsibility. The jury did assign greater responsibility to St. Elizabeth than Allco, and as the builder, Allco had primary or initial responsibility for painting the curb. That finding, however, does not establish harm. The garage had been operational and under St. Elizabeth's control for almost three years at the time of Flo's fall. The jury could reasonably conclude that, with the passage of time, Allco's responsibility decreased and St. Elizabeth's responsibility increased. Issue Three is overruled.

C. *Subsequent Remedial Measures*.

St. Elizabeth next complains that the trial court erred by admitting evidence of subsequent remedial measures, specifically the fact that the curb was painted after Flo's fall. The Wilsons respond that any error has been waived. We review a trial court's evidentiary rulings for abuse of discretion. *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

The Wilsons offered into evidence a picture of the stairs that was taken after Flo's fall and after the step had been painted. St. Elizabeth objected, contending that the photo had not been produced during discovery and that it referenced a subsequent remedial measure. The trial court asked if the picture had been produced, and when the Wilsons told the court that it had, it overruled St. Elizabeth's objection. The Wilsons argue that the trial court only ruled on the discovery objection and that, because St. Elizabeth did not obtain a specific ruling on its subsequent remedial measure objection, St. Elizabeth waived this argument. We disagree. St. Elizabeth clearly brought to the trial court's attention its contention, and the fact that the trial court only asked counsel a

10

question about discovery does not mean that the trial court did not consider the subsequent remedial measure objection. St. Elizabeth's contention has been preserved.

Subsequent remedial measures are not admissible to establish liability for a prior accident. TEX. R. EVID. 407. However, this rule is not without exception, and the Wilsons contend that the photograph was admissible "to show the way [the curb is] supposed to be painted." However, there was no dispute about how the curb should have been painted. Rule 407 provides: "This rule does not require the exclusion of evidence of subsequent remedial measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." Because St. Elizabeth did not contest how the curb should have been painted, this exception does not apply. In the absence of any exception, the trial court erred by admitting evidence of a subsequent remedial measure.

Erroneous admission of evidence is harmless unless the ruling probably caused the rendition of an improper judgment. Rule 44.1(a). The supreme court has instructed intermediate courts conducting a harm analysis to evaluate the whole case from voir dire to closing argument, considering the state of the evidence, the strength and weakness of the case, and the verdict. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008).

Texas law limits the admissibility of evidence of subsequent remedial measures so that the jury does not consider them as proof of negligence. *Brookshire Bros., Inc. v. Lewis*, 911 S.W.2d 791, 797 (Tex. App.—Tyler 1995, writ denied). In *Lewis*, the court held that admission of a subsequent remedial measure was harmful because the necessity of the remedial measure was at the heart of the case, and the fact that it was done after the accident could be seen as an admission by the defendant. *Id.* In this case, there was no question that the curbs were supposed to be painted. Thus, the fact that St. Elizabeth painted them after Flo's fall did not constitute an admission of an otherwise contested issue. The trial court's error was harmless.

*D. Subsequent Fall.*

Finally, St. Elizabeth complains that the trial court erred by admitting evidence of a subsequent fall. Specifically, St. Elizabeth complains of evidence introduced during Pearson's cross-examination that someone else fell at the same curb after Flo's injury. Pearson had previously testified that, prior to Flo's fall, there were no reported falls in any of the garage's four stairwells. He agreed with his counsel's description of this as "pretty good safety." On cross-examination, the Wilsons' counsel referred to this statement and asked Pearson if he knew Charles English.

11

St. Elizabeth's counsel asked to approach the bench. The subsequent conversation was unrecorded, but the Wilsons' next question was: "Do you recall Mr. Charles English who fell on the exact same spot that Flo Wilson fell off the curb?" St. Elizabeth did not object to this question or the next, but it did object to the clear question on the ground that the subsequent fall was irrelevant. The trial court advised counsel that it had made its ruling, apparently referring to the bench discussion, and directed counsel to move on. Pearson was then questioned about a report involving English falling off the curb after exiting the stairs.

Based upon this record, St. Elizabeth's complaint was not preserved. *See Warrantech Corp. v. Computer Adapters Servs., Inc.*, 134 S.W.3d 516, 529 (Tex. App.—Fort Worth 2004, pet. dismissed) (off-the-record bench conference does not preserve error). But even if it were, the trial court did not abuse its discretion by finding the subsequent fall relevant. A subsequent fall would not establish notice, but St. Elizabeth did not request a limiting instruction. However, a subsequent fall from the same curb was probative of whether the unpainted curb was unreasonably dangerous. St. Elizabeth's fourth issue is overruled.

IV. *Holding*

The judgment of the trial court is affirmed.


RICK STRANGE

JUSTICE


January 29, 2010

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.