

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00357-CV

_____

ROXANNE BRADFORD, Appellant

V.

TEXAS HEALTH HARRIS METHODIST HOSPITAL, Appellee

---

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-307880-19

---

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

After appellant Roxanne Bradford was injured while helping a patient at appellee Texas Health Harris Methodist Hospital (the Hospital), Bradford filed a premises-liability and negligence suit. The trial court granted summary judgment in favor of the Hospital, which Bradford appeals. Because we conclude that Bradford raised a genuine issue of material fact on the Hospital's actual and constructive knowledge of the condition leading to her injury, we reverse the trial court's summary judgment and dismissal of her premises-liability claim and remand that claim for further proceedings. But because Bradford does not challenge the dismissal of her negligence and gross-negligence claims, we affirm the summary judgment as to those claims.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

On June 13, 2018, Bradford went to the Hospital with her son Christian and Christian's girlfriend to await the birth of Bradford's grandchild. Bradford accompanied Christian and his girlfriend because his girlfriend's mother could not be there that day. If the Hospital had not allowed Bradford to be there, Christian's girlfriend would not have gone to the Hospital that day and would have rescheduled her induction for a date her mother was available.

They arrived at approximately 6:00 a.m. and were quickly taken to room 106 in the Hospital's labor-and-delivery department, which is located on the first floor of the

Hospital's Siratt Women's Center. Family members were commonly present during labor, and the Hospital promoted and supported the practice. During Christian's girlfriend's labor, Bradford would ask for ice for her, put damp washcloths on her forehead, and talk to Christian. Bradford also bought snacks for herself and Christian from a vending machine at the Hospital. Other than this trip to the vending machine, Bradford was assisting Christian's girlfriend at her bedside or while sitting in a chair at the foot of the bed. Bradford never noticed water on the floor, dripping water, or any indication that there was a ceiling leak in room 106.

At some point between 4:00 and 6:00 p.m., Bradford was sitting in the chair when she heard a loud noise; part of a ceiling tile broke off and hit her on the back of her head and neck. Tracy Green, the nurse assigned to Christian's girlfriend, came into the room and saw a tile on the floor, "a tile missing out of the ceiling, and . . . Bradford sitting in the chair under . . . where the missing tile was." Green had seen no tile or water problems in room 106 before the tile fell on Bradford. In fact, the ceiling tiles in room 106 had an anti-microbial coating; thus, they would not have shown water damage. Green asked the nurse supervisor, Angie Van Valkenburg, to come to room 106 to address the tile issue and Bradford's injury so Green could focus on Christian's girlfriend. Bradford was taken to the Hospital's emergency department, and a CT scan revealed that her C7 vertebra was fractured.

Van Valkenburg cleaned up the tile debris and noted that the tile was wet and that the floor where the tile had fallen also was wet. Van Valkenburg reported the

incident to the Hospital's maintenance department. Two hours after the incident, Bradford overheard a "maintenance man" tell "a supervisor of sorts" that "there had been a leak [on] the floor above," which had "happened earlier that day." Maintenance workers later determined that condensation from the floor above, where an air-conditioning unit was located, had leaked down and soaked the ceiling tile in room 106:

> There was an area where a cold pipe was exposed to wet hot air, and basically . . . it's condensing the water out of the hot wet air on the cold surface. . . .
>
>    . . . .
>
>    . . . [T]here is an air handler right above [room 106]. And there was actually a roof drain in the floor. . . . And the condensate from the air handler actually fit into the drain, and there's an air gap between the drain and the condensate line, and as it overflowed over the years there were evidently - - Where the floor drain is in the concrete there's a grout . . . around it, but that gave way over a period of time and either had like little small fissures in it or cracks . . . that drained down through the concrete and then ran who knows where. You know, water will go to the lowest point it can.

## B. PROCEDURAL BACKGROUND

Bradford filed suit against the Hospital and raised claims for premises liability, negligence, and gross negligence. Regarding premises liability, Bradford alleged that the Hospital had actual knowledge of the dangerous condition and failed to make the condition safe or warn her of it. Alternatively, she alleged that the Hospital had constructive knowledge of the dangerous condition.

4

The Hospital moved for a traditional and no-evidence summary judgment arguing that because Bradford was a licensee, not an invitee, she had to raise a genuine issue of material fact showing that the Hospital had actual knowledge of the dangerous condition. *See* Tex. R. Civ. P. 166a(b)–(c), (i). The Hospital asserted that Bradford failed to do so because the Hospital did not actually know before the ceiling tile fell in room 106 that it had been saturated with water from the air-conditioning unit. It further argued that her gross-negligence and negligence claims should similarly be dismissed because her injury arose from a premises condition; thus, she was barred from recasting her premises-liability claim as a negligence-based claim.

Bradford responded and argued that the summary-judgment evidence raised material fact issues that she was an invitee and that the Hospital had both actual and constructive knowledge of the dangerous condition. In its reply, filed the day before the summary-judgment hearing, the Hospital argued that even if Bradford were considered to be an invitee, she failed to proffer summary-judgment evidence raising a fact issue that the Hospital had constructive knowledge of the condition. The Hospital attached to its reply a "demonstrative exhibit," which was a drawing of the labor-and-delivery department allegedly showing that the air-conditioning unit above room 106 did not "service[]" other labor-and-delivery department areas on the first floor.

After a nonevidentiary hearing, the trial court granted summary judgment in favor of the Hospital and dismissed Bradford's claims. Bradford appeals the summary

5

judgment, arguing in a single issue that she raised genuine, material fact issues regarding her status when she was at the Hospital and regarding the Hospital's actual or constructive knowledge of the dangerous condition. She does not attack the dismissal of her negligence and gross-negligence claims.

## II.  PROPRIETY OF SUMMARY JUDGMENT

### A.  SUMMARY-JUDGMENT STANDARDS OF REVIEW

We review the trial court's summary judgment de novo. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017). In our review, we examine the entire record in the light most favorable to Bradford, indulging every reasonable inference and resolving any doubts in her favor. *See id.*; *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We consider all grounds presented to the trial court and preserved on appeal. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003).

To prevail on a traditional motion for summary judgment, the Hospital must have established that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Under Rule 166a(i), the Hospital, as the party without the burden of proof, was entitled to move for summary judgment on the ground that no evidence supported a specified, essential element of Bradford's premises-liability claim. *See* Tex. R. Civ. P. 166a(i) & 1997 cmt.; *First United Pentecostal*, 514 S.W.3d at 219; *Timpte Indus., Inc. v. Gish*,

6

286 S.W.3d 306, 310 (Tex. 2009). Unless Bradford produced more than a scintilla of summary-judgment evidence raising a genuine issue of material fact, the court was required to grant the motion. *See* Tex. R. Civ. P. 166a(i) & 1997 cmt.; *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam).

Although the Hospital moved for both a traditional and a no-evidence summary judgment, we generally are to review the ruling on the no-evidence motion first. *See First United Pentecostal*, 514 S.W.3d at 219. If Bradford failed to meet her burden in response to the Hospital's no-evidence motion, a review of the ruling on the traditional motion becomes moot. *Id.* Here, however, our review will be more concise if we consider the grounds raised by the Hospital, whether in its no-evidence or traditional motion, to determine whether the proffered summary-judgment evidence raised a genuine, material fact issue on the challenged premises-liability elements. *See Littleton v. Nationstar Mortg. L.L.C.*, No. 02-19-00238-CV, 2020 WL 1949623, at *4 (Tex. App.—Fort Worth Apr. 23, 2020, pet. denied) (mem. op.); *see also* Tex. R. Civ. P. 166a(c), (i).

## B. PREMISES LIABILITY

### 1. Elements

A premises-liability action is brought by someone who claims to have been injured by a condition of property. *See Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016). To establish a premises-liability claim, Bradford had to show:

7

(1) the Hospital had the requisite knowledge of a condition on the premises, (2) the condition posed an unreasonable risk of harm, (3) the Hospital did not exercise reasonable care to reduce or eliminate the risk, and (4) the Hospital's failure to use such care proximately caused Bradford's injuries. *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992) (op. on reh'g); *see also United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017).

Regarding the first element, the level of the Hospital's required knowledge of the condition—actual or constructive—that Bradford had to establish depended on Bradford's status, in relationship to the property, at the time and place of injury. *See Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010); *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Mayer v. Willowbrook Plaza L.P.*, 278 S.W.3d 901, 915 (Tex. App.—Houston [14th Dist.] 2009, no pet.). A person injured as a result of a premises condition is classified as an invitee, a licensee, or a trespasser.[1] *See Wilson v. Nw. Tex. Healthcare Sys.*, 576 S.W.3d 844, 850 (Tex. App.—Amarillo 2019, no pet.). If Bradford was an invitee, she must have established that the Hospital had actual or constructive knowledge of the condition; if she was a licensee, she must have shown that the Hospital had actual knowledge of the condition. *See Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014) (per curiam); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983); *State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974);

---

[1]No party argues that Bradford was a trespasser.

8

*Vernon v. Dall./Fort Worth Int'l Airport Bd.*, No. 02-16-00488-CV, 2017 WL 2979828, at *2 (Tex. App.—Fort Worth July 13, 2017, no pet.) (mem. op.). In other words, the duty owed to an invitee, licensee, or trespasser varies inversely with the level of knowledge required by the premises owner. *See generally Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 660 (Tex. 1999) (Enoch, J., concurring) (explaining level of duty owed based on plaintiff's status).

Bradford and the Hospital focus a significant portion of their briefing on Bradford's status at the time she was injured. But we need not wade into this issue if she failed to raise a genuine issue of material fact regarding the Hospital's actual or constructive knowledge of the condition at issue.[2] *See* Tex. R. App. P. 47.1; *Vernon*, 2017 WL 2979828, at *2; *cf.* Michol O'Connor, *O'Connor's Texas Causes of Action* ch. 23-A, § 3 (2021) ("The duties are cumulative, so that the duty the possessor owes to

---

[2]We disagree, however, with the Hospital's assertion that "Texas law is clear that Bradford was a licensee at the time of the incident." While some cases indicate that a hospital visitor may be classified as a licensee, *see, e.g.*, *Lujan v. Methodist Hosp.*, No. 01-20-00158-CV, 2020 WL 7702185, at *3 (Tex. App.—Houston [1st Dist.] Dec. 29, 2020, pet. filed) (mem. op.); *Nw. Tex. Healthcare*, 576 S.W.3d at 850; *Wong v. Tenet Hosps. Ltd.*, 181 S.W.3d 532, 538 (Tex. App.—El Paso 2005, no pet.), a premises-liability plaintiff's status is a fact-intensive, multi-factor inquiry that renders factually dissimilar cases, such as these, unpersuasive. Here, unlike many of the cases relied on by the Hospital, Bradford proffered summary-judgment evidence arguably raising a fact issue as to her status at the time of the incident. *See, e.g.*, *Smith v. Brittain*, No. 12-19-00397-CV, 2020 WL 6164983, at *3–4 (Tex. App.—Tyler Oct. 21, 2020, no pet.) (mem. op.); *City of Fort Worth v. Posey*, 593 S.W.3d 924, 930–31 (Tex. App.—Fort Worth 2020, no pet.); *cf. McClure v. Rich*, 95 S.W.3d 620, 625–26 (Tex. App.—Dallas 2002, no pet.) (holding social guest could be considered an invitee based on summary-judgment evidence showing that guest had been invited to premises to assist in an endeavor that served the possessor's economic interests).

invitees includes the duties owed to licensees and trespassers.").  Accordingly, we will first determine whether Bradford raised a genuine issue of material fact that the Hospital had actual or constructive knowledge of the condition.

## 2.  The Hospital's Knowledge

### a.  Actual

Actual knowledge "requires knowledge that the dangerous condition existed at the time of the accident," which is more than knowledge "of the possibility that a dangerous condition c[ould] develop over time."  *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008) (per curiam).  In short, actual knowledge is not hypothetical.  *See City of Denton v. Paper*, 376 S.W.3d 762, 767 (Tex. 2012) (per curiam); *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 117 (Tex. 2010) (per curiam).  "[C]ourts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition."  *Univ. of Tex.– Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam).  Circumstantial evidence can establish actual knowledge but only if the evidence either directly or by reasonable inference supports such a conclusion.  *See Stewart*, 249 S.W.3d at 415.

The type of air-conditioning system installed at the Hospital would commonly have water splashing from the drain pipe and around the floor drain; both the drain pipe and the floor drain had been installed "before 2001."  This system, located on the second floor in a mechanical room, is comprised of a large unit that serves the first-floor labor-and-delivery department.  In fact, anti-microbial ceiling tiles in the

10

labor-and-delivery department, which had been installed in 2005, had previously required replacement even though they typically would not have shown stains. In September 2016, after a ceiling tile had to be replaced in the "anter room" in room 106, a pipe had to be insulated because the "ceiling [was] leaking." In May 2017, "soggy wet" ceiling tiles in a labor-and-delivery operating room had to be replaced after a "drain pan issue" caused ceiling "leaks." In July 2017, a ceiling tile in the "Ante room" of room 104 in the labor-and-delivery department was "stained/broken" and had to be replaced. Eight days before Bradford's injury, water dripping from the ceiling of a housekeeping closet, located outside of a labor-and-delivery operating room, was discovered to be coming from the condensation drain of the air-conditioning unit located above the ceiling. Five days before Bradford's injury, ceiling tiles in a labor-and-delivery recovery room were wet, with "water dripping to [the] floor," which was "coming from the condensation drain from A/C unit above."[3] That same day, a shift report, written by a maintenance technician, noted that a

---

[3]Six days after the occurrence at issue, the ceiling in room 106 again leaked due to "the CSU air-handling unit drain overflowing onto the floor"—the same problem that had occurred on June 13, 2018. This incident, of course, is not directly relevant to the Hospital's prior actual knowledge of the condition that led to Bradford's injury; however, it circumstantially shows that condensation–drainage issues, resulting in leaks on the first floor, were common in the summer months.

"humidifier" was "leaking into vents and onto the floor of the recovery room" in the labor-and-delivery department.[4]

The Hospital contends that because only one of these incidents involved room 106 and because there was no indication that, on June 13, 2018, there was a water issue in room 106 involving the exact tile that fell on Bradford's neck, Bradford's summary-judgment evidence does not raise a fact issue that the Hospital had any knowledge of the condition leading to Bradford's injury. However, circumstantial evidence and prior reports of the potential danger created by the condition can raise a fact issue regarding actual knowledge. *Aguilar*, 251 S.W.3d at 514. Here, there were prior reports that water from the second floor was leaking into the labor-and-delivery department, which would allow a reasonable inference that the Hospital had actual knowledge of the condition leading to Bradford's injury. Indeed, the Hospital's director of engineering stated that when condensation would drain down, it would run "who knows where," but to "the lowest point it can."

The Hospital also points to its demonstrative exhibit, which it attached to its summary-judgment reply, and argues this drawing shows that the other labor-and-delivery rooms were "serviced" by different air-conditioning units, negating actual knowledge of the condition leading to Bradford's injury. However, this summary-

---

[4]The Hospital seems to argue the two incidents on June 8 were the same; however, the shift report notes a different work-order number than the number assigned to the condensation-drain issue.

judgment evidence was filed the day before the summary-judgment hearing—too late to be considered by the trial court in ruling on the Hospital's motion—and there is no affirmative indication in the record that the trial court granted leave to file or actually considered the late-filed, demonstrative exhibit.[5] *See* Tex. R. Civ. P. 166a(c); *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259–60 (Tex. 2020) (per curiam); *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996). Further, the Hospital raised its argument that the prior ceiling leaks did not provide actual notice of the dangerous condition and involved different air-conditioning units for the first time in its reply. This actual-notice argument was raised too late to be considered as a ground supporting the trial court's summary judgment. *See Reliance Ins. Co. v. Hibdon*, 333 S.W.3d 364, 378 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (op. on reh'g); *RR Publ'n & Prod. Co. v. Lewisville ISD*, 917 S.W.2d 472, 473–74 (Tex. App.— Fort Worth 1996, no pet.).

In any event, the Hospital's arguments that the prior leaks were not tied to the air-conditioning unit above room 106 draw too fine a line. *See Lower Neches Valley Auth. v. Murphy*, 536 S.W.2d 561, 563 (Tex. 1976) ("The Court of Civil Appeals misapplied the [knowledge] exception in holding that the dangerous condition was not the presence of humps of clay in the area of Wendell's [canal] dive . . . but was the exact hump that Wendell struck."). Whether the Hospital's knowledge that water

---

[5]At the hearing, the trial court stated that it had read the Hospital's reply but did not mention that it considered the late-filed, demonstrative evidence.

from the floor above was leaking down to the labor-and-delivery rooms below constituted actual knowledge that water was leaking specifically into room 106 was a distinction for the fact-finder to resolve. *See Capitol Life Ins. Co. v. Newman*, No. 05-16-01476-CV, 2018 WL 4356573, at *3 (Tex. App.—Dallas Sept. 13, 2018, pet. denied) (mem. op. on reh'g) ("Summary judgment is rarely proper when the cause involves an issue inherently for the fact-finder. . . ."); *Murray v. Cadle Co.*, 257 S.W.3d 291, 302 (Tex. App.—Dallas 2008, pet. denied) (op. on reh'g) ("Issues of knowledge and intent are rarely appropriate for summary judgment."); *cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). In other words, the circumstantial evidence of leaks into other rooms of the first-floor labor-and-delivery department, some of which the Hospital was actually aware involved an air-conditioning unit on the floor above, would allow a fact-finder to reasonably infer this fact in favor of Bradford.

And at the summary-judgment stage, Bradford needed only to raise a genuine issue of material fact that the Hospital had actual knowledge of the leaking problems in the labor-and-delivery department at the time Bradford was injured. The Hospital argues that the summary-judgment evidence established that the condensation issue could not have been discovered before Bradford was injured. However, Bradford proffered competing evidence that circumstantially supported a finding that the

14

Hospital had actual knowledge that the water from an air-conditioning unit had previously leaked into the ceiling of the labor-and-delivery department, which would allow a fact-finder to reasonably infer that the Hospital had actual knowledge of the condition leading to Bradford's injury. *See Morales v. Alcoa World Alumina L.L.C.*, No. 13-17-00101-CV, 2018 WL 2252901, at *11 (Tex. App.—Corpus Christi–Edinburg 2018, pet. denied) (mem. op.); *Christus Health Se. Tex. v. Wilson*, 305 S.W.3d 392, 397 (Tex. App.—Eastland 2010, no pet.); *cf. Aguilar*, 251 S.W.3d at 513 (holding premises owner did not have actual knowledge of condition because no evidence proffered of prior injuries or reports of potential danger presented by condition); *City of Dall. v. Freeman*, No. 05-18-00961-CV, 2019 WL 3214152, at *1 & n.2 (Tex. App.—Dallas July 17, 2019, no pet.) (mem. op.) (holding no actual knowledge because premises owner had received no complaints about condition for two years before accident); *Rice Food Mkt., Inc. v. Hicks*, 111 S.W.3d 610, 613 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (holding plaintiff failed to conclusively establish actual knowledge because there was no evidence of similar prior incident). In other words, the competing summary-judgment evidence allowed a fact-finder to reasonably infer actual knowledge and find that fact in favor of Bradford; thus, Bradford raised a genuine issue of material fact. *See Rayon v. Energy Specialties, Inc.*, 121 S.W.3d 7, 11–12 (Tex. App.—Fort Worth 2002, no pet.); *cf. Mass Mktg. Ltd. v. Durbin*, No. 04-09-00697-CV, 2010 WL 4109260, at *3–4 (Tex. App.—San Antonio Oct. 20, 2010, pet. denied) ("We hold the evidence supports the reasonable inference that Mass

15

Marketing had knowledge small crates create a tripping hazard. . . . Any inconsistencies in the evidence were apparently resolved in Durbin's favor by the jury.").

### b. Constructive

Constructive knowledge "can be established by facts or inferences that a dangerous condition could develop over time." *Stewart*, 249 S.W.3d at 415. To do so, a plaintiff must show that the condition had existed long enough for the owner to have had a reasonable opportunity to discover it in the exercise of ordinary care. *See Wal–Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814, 816 (Tex. 2002); *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102–03 (Tex. 2000). Because we have found a genuine fact issue regarding the Hospital's actual knowledge, that evidence necessarily raises a fact issue as to constructive knowledge. Even so, evidence of the prior instances of water leaking from an air-conditioning unit on the second floor to the first floor's labor-and-delivery department raised a genuine fact issue as to the Hospital's constructive knowledge. *See Posey*, 593 S.W.3d at 931–32.

### III. CONCLUSION

Viewing the summary-judgment evidence in the light most favorable to Bradford, we conclude that she proffered more than a scintilla of summary-judgment evidence and raised a genuine issue of material fact as to the Hospital's actual and constructive knowledge of the premises condition leading to her injury. We sustain Bradford's appellate issue. Accordingly, we reverse that portion of the trial court's

16

order granting summary judgment as to Bradford's premises-liability claim and remand this case to the trial court for further proceedings on that claim. *See* Tex. R. App. P. 43.2(d), 43.3(a). However, we affirm the summary judgment on and dismissal of Bradford's negligence and gross-negligence claims, which she does not challenge on appeal. *See* Tex. R. App P. 43.2(a); *Little v. Delta Steel, Inc.*, 409 S.W.3d 704, 722–23 (Tex. App.—Fort Worth 2013, no pet.).

/s/ Brian Walker

Brian Walker
Justice

Delivered: May 6, 2021